·  PEW, APPELLANT, *v.* JOHNSON, RESPONDENT.

(No. 2,360.)

(Submitted January 18, 1907.  Decided February 11, 1907.)

(88 Pac. 770.)

*Water  Rights—Equity—Evidence—Conveyance  of  Land—Appurtenances—Judgments—Res Adjudicata.*

Equity Cases—Supreme Court—Trial *de Novo.*
    1.  Under section 21 of the Code of Civil Procedure as amended (Laws, 1903, 2d Extra. Session, p. 7), authorizing and requiring the supreme court in.equity cases to review and determine all questions of fact arising upon the evidence, as well as those of law, that court, if it deems it advisable, will in a case wherein the title to a water right is sought to be quieted and defendant enjoined from further interference therewith, disregard the questions presented upon alleged errors of the district court, and dispose of the merits of the appeal upon a review of the evidence alone.

Water Rights—Evidence—Findings—Adverse User.

2.   Evidence in an action to quiet title to a water right and have defendant enjoined from further interference with it, which showed that defendant and his predecessors had used the water in question for forty years in derogation of the alleged rights of plaintiff and his grantors, and that defendant had not infringed upon any right of plaintiff, *held,* to warrant a finding in favor of defendant.

Same—Conveyance of Land—Appurtenances.

3.   Where the father of plaintiff's grantor had merely permitted his son to use certain waters on the lands conveyed to plaintiff, such permissive use by plaintiff's grantor did not make it appurtenant to the lands sold, and the grantee obtained no better title to the use ot it than his grantor himself had.

Evidence—Testimony at Former Trial—Stenographic Notes—Identification.

4.   Where the stenographer who took the testimony of a witness since deceased was dead at the time the testimony was sought to be used, and no one could be found who could read the stenographer's notes, or testify to the correctness either of the notes or the transcript, or to the fact that the transcript embodied the testimony of the witness as given at the former trial, it was not identified as required by Code of Civil Procedure, section 3146, and therefore inadmissible.

Water Rights—Judgments—Who May be Bound by Them—*Res Adjudicata*—Parties.

5.   A plaintiff in a water right suit who, though not technically a party to certain prior suits of the same character, was so connected with them by his interest in the result of the litigation and his active participation in it, will be held to be bound by the judgments rendered in such other suits.

*Appeal from District Court, Broadwater County; W. R. C. Stewart, Judge.*

ACTION by George H. Pew against S. S. Johnson. From a judgment for defendant, and from an order denying him a new trial, plaintiff appeals. Affirmed.

*Mr. C. B. Nolan,* and *Mr. C. E. Pew,* for Appellant.

On the proposition that the judgment-rolls in prior suits were not *res adjudicata,* and therefore improperly admitted, see *City of Spanish Fork* v. *Hopper,* 7 Utah, 235, 26 Pac. 293; *Throckmorton* v. *Burr,* 5 Cal. 400; *Covillaud* v. *Tanner,* 7 Cal. 38; *Wattson* v. *Dowling,* 26 Cal. 127; *Williams* v. *Sutton,* 43 Cal. 71. A person not a party to the litigation cannot, by accepting the result, make such judgment *res adjudicata* in his favor and preclude parties to the action from objecting that the judgment was not binding upon them. (24 Am. & Eng.

Ency. of Law, 2d ed., p. 730.) Judgments are only binding upon parties and privies. (24 Am. & Eng. Ency. of Law, 2d ed., p. 726.) A judgment is conclusive as to the questions of fact in issue and determined. (24 Am. & Eng. Ency. of Law, 2d ed., p. 765. See, also, *Campbell* v. *Rankin,* 2 Mont. 369; *Curtis* v. *Donnell,* 3 Mont. 214; *Fredericks* v. *Clark,* 3 Mont. 260; *Meyendorf* v. *Frohner,* 3 Mont. 318; *Kleinschmidt* v. *Binzel,* 14 Mont. 54, 43 Am. St. Rep. 604, 35 Pac. 460; *Bell* v. *Mernfield,* 109 N. Y. 202, 4 Am. St. Rep. 436, 16 N. E. 55; *Palmer* v. *McMaster,* 8 Mont. 190, 19 Pac. 585; *Gray* v. *Dougherty,* 25 Cal. 272; Herman on Estoppel, secs. 94-111; *Packett Co.* v. *Sickles,* 5 Wall. 592, 18 L. Ed. 550; *Maloney* v. *Finnegan,* 40 Minn. 281, 41 N. W. 979; *Wagner* v. *St. Peter's Hospital,* 32 Mont. 215, 79 Pac. 1054; *Webber* v. *Mackey,* 31 Ill. App. 369; *Clark* v. *Blair,* 14 Fed. 812, 4 McCrary, 311.)

If water is used upon premises by the owner, and the premises are transferred to another at the time when the water is so used, and there is no reservation of the water, in a transfer thus made the water thus used passes as an appurtenance. (*Simmons* v. *Winters,* 21 Or. 35, 28 Am. St. Rep. 727, 27 Pac. 7; *Wilson* v. *Higbee,* 62 Fed. 723; *Ely* v. *Ferguson,* 91 Cal. 187, 27 Pac. 587; *Crooker* v. *Benton,* 93 Cal. 365, 28 Pac. 953.)

*Mr. E. A. Carleton,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to determine, as between the plaintiff and defendant the right to the use of the waters of Silver creek, in Lewis and Clark county.

Plaintiff claims the right to the exclusive use of one hundred and sixty-seven and one-half inches, statutory measurement, as the successor in interest of one Austin and one Dale, who, in 1865, settled upon adjoining portions of section 29, township 11, north of range 3 west, which is traversed by said stream, and on May 25th of that year made a joint appropriation of water therefrom

and established their right by constructing a joint ditch, thereby conveying the waters to their respective premises. At the date of these settlements none of the lands in that neighborhood had been surveyed, and Austin and Dale staked their claims expecting to make the boundaries conform to the lines of the survey when it should be made. The survey was made in 1868 or 1869. Three or four other claims were taken up along the stream during the same year. Austin was highest up the stream. Dale was next below him. Adjoining Dale below, Austin staked a claim for one Bean. Next came one Harold who "took up" a claim in the winter of 1865.

The evidence is somewhat vague and indefinite as to what portion of these lands is now owned by defendant, for it does not distinctly show to what extent the boundaries as first fixed by the respective claimants were changed at the time the survey was made. It is clear, however, that the defendant owns a portion of the Bean and Harold lands as they were originally staked, and, possibly, a part of the Dale lands. Next below these claims one Bartlett made a settlement in 1865. The title to all of these lands afterward passed by patent from the United States to the successors of these original settlers. At present the plaintiff is the owner of the southeast quarter of section 30, and of the south half of the northwest quarter of section 29, none of these having been included in the Austin or Dale settlements. The latter subdivision was acquired by the predecessors of plaintiff by deed from the Northern Pacific Railroad Company.

In his complaint plaintiff claims eighty inches of the Austin and Dale appropriation by mesne conveyances to him of the lands last mentioned, with appurtenances, through one J. R. Johnson, and the remaining eighty-seven and one-half inches by mesne conveyance of a half interest in the water right through one Kleinschmidt, who bought it from Johnson in 1884, to be used on lands other than any of those mentioned, belonging to Kleinschmidt. He alleges that the defendant has for the past two years wrongfully and without right of title, but under a claim of right thereto, been diverting these waters to his irrep-

arable damage, and asks that his title be quieted and that defendant be enjoined from further interference with them.

The defendant in his answer puts in issue most of the material allegations of the complaint. He admits, however, that the Austin and Dale appropriation was made in 1865 as alleged, but denies that it ever consisted of more than fifty inches. He avers that it was made, to the extent of one-half of it, for the use and benefit of the lands now owned by the defendant, to-wit, the southeast quarter of section 29, the same being part of the lands therein owned and possessed by said Austin and Dale. He pleads and relies upon three several judgments rendered by the district court of Lewis and Clark county, adjudicating the relative extent and priorities of the rights of the parties thereto, to the use of the waters of Silver creek, some of whom are alleged to have been predecessors, respectively, of the plaintiff and defendant, as prior adjudications of the rights here involved, and a complete estoppel of the claim now made by the plaintiff. He further avers that he has never at any time used more than one-half of the Austin and Dale right, but that he has been using it to that extent and intends to continue to do so, since he is the owner of the right to that extent. He alleges that he and his grantors and predecessors in interest have, for a period of forty years last past, and in derogation of the alleged exclusive right of plaintiff and his grantors, openly, notoriously, continuously and adversely to the plaintiff and his grantors, used one-half of the Austin and Dale right upon the lands now owned by him. Upon these allegations there was issue by reply.

It will be noticed that the only issue presented by the pleadings is as to the right to the beneficial use by defendants of twenty-five inches of the Austin and Dale appropriation. The court found this issue for the defendants, and thereupon entered judgment dismissing the action. This appeal is from the judgment and an order denying plaintiff's motion for a new trial.

The court found, in substance, that the judgments referred to are *res adjudicata* as to plaintiff's alleged cause of action; that the waters appropriated through the Austin and Dale ditch were

intended for use on a portion of the lands now owned by defendant; that no part of them was ever appurtenant to the lands now owned by the plaintiff; that Kleinschmidt had no interest therein which he could convey to plaintiff; and that, even if the predecessors of plaintiff ever owned the exclusive right therein, the defendant and his predecessors had been using them adversely to plaintiff's alleged right for more than forty years, and hence defendant has an indefeasible title thereto.

Contention is made that the court erred in permitting to be introduced in evidence the judgments referred to, for the reason that neither the plaintiff nor any of his predecessors were parties to them, and for the further reason that the right here involved was not in issue in any of the causes wherein they were rendered. Contention is also made that the court erred in permitting to be introduced in evidence, over objection of defendant, a transcript of the stenographic notes of the testimony of one W. H. Ewing, deceased, given in the case of *Butler and Mynderse* v. *S. S. Johnson,* one of the causes above referred to, for the reason that the controversy therein involved was not an action between the same parties relating to the same matter.

It is further contended that the findings of the court are not supported by the evidence, and that they in turn do not support the judgment. Since the statute (Code Civ. Proc., sec. 21, as amended by Act of 1903 [Session Laws, 1903, 2d Extra. Session, p. 7]), authorizes and requires this court in equity cases to review all questions of fact arising upon the evidence and determine the same, as well as questions of law, and since the merits of this case can readily be determined without the solution of the questions presented by the contentions of counsel, we forego an examination of any of them. Conceding that all the contentions made should be sustained, yet, upon the evidence, we think the result reached by the district court was correct.

As stated above, the evidence as to the boundaries of the original claims staked by Austin, Dale, Bean and Harold is vague and indefinite; yet it does lend support to the conclusion that a part of the Dale land is now included in that owned by the de-

fendant. In any event, it shows almost conclusively that the defendant owns what were originally the Bean and Harold claims. It further shows that the plaintiff obtained his land from the patentee of the Austin lands. Each party is therefore entitled to claim the waters in question, but to the extent only that the Austin and Dale appropriation is shown to have been appurtenant to his lands, or to which he has become vested with the right by a specific conveyance; for both claim under this right and no other.

The facts in connection with this appropriation are these: Austin and Dale, soon after their settlement in 1865, took out a common ditch from Silver creek and conveyed water therein to their lands to irrigate their vegetable gardens and small areas sown in grain. In neither case was a greater area than six or eight acres cultivated. It seems that no part of the Bean land was cultivated that year; but the ditch, which was finished about June 1st, extended to the east line of the Dale place. The next spring Harold and one or two other settlers to the east and below joined with Austin and Dale in changing the point of diversion farther up the creek. They enlarged the ditch and extended it through the Bean and Harold claims down to the Bartlett claim. Thereafter, by amicable arrangement, the successors in interest of Harold and Bean, the predecessors of defendant, and the defendant used the waters so diverted to the extent of twenty-five inches in the cultivation of their land. At no time, except in the various actions hereinbefore referred to, was this right questioned; and in the latter two of them the twenty-five inches were awarded to defendant. Indeed, J. R. Johnson, who without doubt acquired the principal part of the Austin and Dale lands by patent, and through whom the plaintiff claims his right, lived up to this arrangement, he and the defendant and his predecessors each claiming to be the owner of a half interest. When the water was plentiful, each took what he needed; when it was scarce, they used it alternately. So that, conceding that the conveyance of the half interest by J. R. Johnson to Kleinschmidt, and by him to the plaintiff, was valid and sufficient to

convey that interest, still, looking to the original appropriation, the method by which defendant's grantors acquired their interest and the manner of its use during forty years, the defendant is entitled to the use he claims; and, since the evidence further shows that he has not transcended his claim in the amount used, he is not shown to have infringed upon the rights of plaintiff, and plaintiff's action was therefore properly adjudged to be without foundation.

Further, it does not appear that J. R. Johnson ever questioned the right of defendant, even after the conveyance by him to Kleinschmidt of the half interest. By that conveyance, which was in fact an exchange of rights, he obtained from Kleinschmidt ostensibly an interest in waters from other sources which he thereafter used upon his place.

From another point of view the plaintiff cannot recover. David Johnson, the grantor of plaintiff of the lands now owned by him, was the son of J. R. Johnson. The lands of the latter were immediately to the east and south of David Johnson's land. The son obtained his land from his father. The remaining lands of J. R. Johnson were conveyed by him to other parties, not interested here. As long as David Johnson held his land, any use of water made by him thereon was by permission of his father; and though the Austin and Dale appropriation may have been used by him, such use of it could not and did not make it appurtenant to any of this land. So that the plaintiff, the grantee of David Johnson, could obtain no better title to the use of it as an appurtenance to David Johnson's land than had Johnson himself. Therefore, from either point of view, the district court reached the correct result.

We have not so far considered the deposition of Ewing to which objection was made. This should have been excluded, because it was not properly identified. The stenographer who made the transcript of it was dead; and since it appeared that no one could be found to read his stenographic notes or to speak as to the correctness of them, or of the transcript, or to the fact that the transcript embodied the testimony of the witness as

given at the former hearing, it was not brought within the rule of the statute authorizing its use.    (Code Civ. Proc., sec. 3146; *Reynolds* v. *Fitzpatrick*, 28 Mont. 170, 72 Pac. 510.)

In conceding, for the purpose of this case, the correctness of the contention made by counsel for appellant that the judgment-rolls were improperly admitted, we do not wish to be understood as expressing any opinion thereon, further than to say that we are inclined to think that, while the plaintiff was not technically a party to any one of the cases in which those judgments were rendered, he was nevertheless so connected with them by his interest in the result of the litigation and his active participation therein, that he is bound by them.    From this point of view, the judgment of the district court would be justified upon the consideration of those judgments alone, without reference to the other evidence, which abundantly supports its conclusion.

The judgment and order are affirmed.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.

Rehearing denied March 6, 1907.