ESTEY & CAMP et al. v. LUTHER et al.[†]

(Court of Civil Appeals of Texas. Austin. June 28, 1911. Rehearing Denied Oct. 11, 1911.)

1. JUDGMENT (§ 675*)—RES JUDICATA—PERSONS BOUND.

A judgment debtor who procures a purchaser to sue to remove a cloud on the title cast by the recording of an abstract of a judgment, on the ground that no citation was served on the debtor, bears such a relation to the suit as renders the judgment denying relief binding on him; and he may not subsequently obtain relief by petition or bill of review to annul the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191, 1194; Dec. Dig. § 675.*]

2. JUDGMENT (§ 456*)—VACATION—LACHES.

A purchaser at the procurement by the vendor, a judgment debtor, sued to remove a cloud on the title cast by the recording of abstracts of judgments against the vendor, rendered in a justice's court. The judgment creditor filed a cross-action, and alleged that he had a valid lien on the land created by the recording of the abstracts of the judgments against the vendor, which registration was prior to the purchase by the purchaser. The debtor, so related to the action as to be bound by a judgment therein, failed to appear to attack the judgments, and this was done on the advice of his counsel, who advised that relief could be procured elsewhere. Held, that the debtor was guilty of laches, and he could not maintain a bill of review to annul the judgments, under the rule that the mistakes of an attorney are attributable to the client, and the debtor should have requested the court to continue the case until he could institute and prosecute to final judgment a proceeding in the justice's court to annul the judgments, if the district court was without jurisdiction to annul them.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 456.*]

Petition for writ of prohibition by Estey & Camp and others against John Luther and others to compel the rescinding of restraining orders and writs of injunction, and to prohibit further interference with the enforcement of a judgment for relators. Writ issued.

F. M. Brantly, for complainants. Nelson Phillips, for respondents.

KEY, C. J. On the 3d day of November, 1898, Estey & Camp instituted three several suits in a justice of the peace court of Tarrant county, which were numbered 6,574, 6,575, and 6,576, respectively, upon the docket of said court, in each of which suits John Luther was the sole defendant. On November 28, 1898, judgment by default was rendered in favor of the plaintiffs and against the defendant in the first two suits for $175.50 in the first and $226 in the second, together with costs and 10 per cent. interest. On November 25, 1898, a similar judgment was rendered in the other case for $147.75, with interest and costs. Each judgment recited that the defendant, John Luther, had been duly cited, but failed to appear and answer.

Abstracts of the first two judgments referred to were duly recorded in Bosque county, so as to fix a lien on real estate, on the 14th day of March, 1908. On November 10, 1908, J. T. Luther and his wife conveyed, by warranty deed, to G. H. Williams certain tracts of land situated in Bosque county, which deed was duly recorded in that county November 16, 1908. December 30, 1908, G. H. Williams instituted a suit against Estey & Camp in the district court of Bosque county, in which he alleged that he had purchased the land from John T. Luther and wife, and that Estey & Camp, by causing the aforesaid abstracts of judgments to be recorded in Bosque county, had created a cloud upon his title to the land. He alleged that he did not know whether the John Luther mentioned in said judgments was the same Luther from

whom he purchased the land, but that the defendants were insisting that such was the case. He also alleged that said judgments were void, because no service of citation was ever had on his vendor, John T. Luther. He prayed for judgment for title and possession of the land and removing cloud from his title, and for general and special relief.

Estey & Camp filed an answer, which embraced exceptions, a general denial, and a cross-action, asserting the validity of the two judgments, abstracts of which had been recorded in Bosque county, and seeking a decree foreclosing the liens created by the record of such abstracts upon the lands described in the plaintiff's petition.

On the 23d day of April, 1909, the case was tried, and judgment rendered in favor of the plaintiff Williams and against the defendants Estey & Camp, decreeing that the two judgments and abstracts thereof referred to were null and void, and removing the cloud thereby cast upon the plaintiff's title to the land referred to. From that judgment, Estey & Camp prosecuted an appeal, and the case was transferred to this court, where, on January 11, 1911, judgment was entered, reversing the judgment of the trial court and rendering judgment establishing and foreclosing Estey & Camp's lien upon the land, with directions that the judgment of this court be certified to the district court of Bosque county, and that that court enforce the judgment here rendered. Through inadvertence, this court's judgment of foreclosure is against John Luther, as well as G. H. Williams, though Luther was not a formal party to the suit, and was not at that time supposed by this court to occupy such relation to the case as would render the judgment binding upon him. G. H. Williams, the appellee in that suit, filed a motion for rehearing in this court contesting our holding that his suit was not a direct attack upon the justice court judgments, and that, for that reason, it was not permissible for him to show by parol evidence that his vendor, Luther, was not served with citation, and had no notice of the pendency of the suits against him in the justice court until after the judgments were rendered. Besides making the ruling referred to, this court held that, if it was mistaken in that respect, then the evidence contained in the statement of facts was insufficient to support the finding of the trial court that the defendant Luther, in the justice court cases, was not served with citation. The motion for rehearing in this court did not challenge the correctness of that ruling. That motion was overruled, and thereafter Williams made application to the Supreme Court for a writ of error, which application was refused. For further particulars concerning the opinion of this court in the case, see Estey & Camp v. Williams, 133 S. W. 470.

Thereafter this court issued its mandate to the district court of Bosque county, and, on the 4th day of March, 1911, the clerk of that court, in pursuance of the mandate of this court, issued an order of sale, directing the sheriff of Bosque county to seize and sell the land referred to, for the purpose of satisfying the judgment rendered by this court in favor of Estey & Camp. The sheriff levied that process upon the land referred to, and advertised the same to be sold on the first Tuesday in April, 1911.

On the 1st day of April, 1911, John Luther filed, in the justice court of Tarrant county, where the aforesaid judgments were rendered against him, a petition or bill of review to annul, vacate, and set aside the judgments referred to, and on the same day J. M. and Z. T. Burkett and John Luther presented to the Honorable O. L. Lockett, judge of the district court of Bosque county, a petition, asking for a writ of injunction restraining the sheriff of Bosque county from selling the land referred to under the order of sale referred to, and from in any wise attempting to enforce said order of sale, or any other process or writ under the judgment of this court, against said land, and restraining and enjoining Estey & Camp, their agents, attorneys, and employés from causing any other or further executions or process to be levied upon said land, for the purpose of satisfying the aforesaid judgments rendered by the justice of the peace of Tarrant county, pending the rendition of final judgment in the proceeding instituted by Luther for the purpose of annulling said judgments, as above referred to. Upon examination of the petition, Judge Lockett made an order in chambers, directing the clerk to issue the writ of injunction prayed for, upon the plaintiffs giving bond in the sum of $2,200. The bond was given, and the writ of injunction issued and duly served.

On the 3d day of April, 1911, John T. Luther presented a somewhat similar petition to the Honorable W. T. Simmons, judge of the district court of Tarrant county, in which he prayed for and obtained an injunction, restraining the issuance and execution of any process for the enforcement of the judgment rendered by the justice of the peace of Tarrant county, as aforesaid, until after the termination of the proceeding instituted for the purpose of annulling those judgments.

On May 16, 1911, Estey & Camp filed in this court a motion and petition for a writ of prohibition against John Luther, J. M. and Z. T. Burkett, and the two district judges referred to, requiring the latter to rescind the restraining orders and writs of injunction referred to, and prohibiting all the respondents from further interfering with the enforcement of the judgment of this court. The respondents have filed answers which show that no contempt was intended, and that the acts complained of were believed by them to be lawful and proper.

In addition to the preceding, it is proper to state that J. M. and Z. T. Burkett show in

their petitions for injunctions that they have purchased the land in question from G. H. Williams. In the petition filed in the justice court of Tarrant county by respondent Luther, seeking to annul the judgments therein rendered against him, among others are the following allegations: "He further represents that on the 14th of March, 1908, the said Estey & Camp caused abstracts of the said judgments in suits Nos. 6,574 and 6,575 to be duly filed, recorded, and indexed in the office of the county clerk of Bosque county, Tex., where at that time he owned certain tracts or bodies of land, and which operated to fix a judgment lien upon said land; that thereafter he sold said land to one G. H. Williams, and afterwards, on the advice of counsel, a suit was instituted in the district court of Bosque county, Tex., in the name of G. H. Williams, as plaintiff, and against Estey & Camp and the Estey Organ Company, as defendants, wherein the invalidity of the aforesaid judgments in said suits Nos. 6,574 and 6,575 was alleged, on account of the want of service of any citation therein upon this plaintiff, and on that ground the cloud cast upon the title to said land by reason of the abstract of said judgments was sought to be removed; that this plaintiff, while not nominally a party to that suit, was interested therein, and caused the same to be brought and instituted because of his having conveyed said land to the said Williams by a general warranty deed, and his obligation to the said Williams to clear the title thereto of said pretended lien; that it was the advice of his counsel that the invalidity of said judgment could be properly asserted and established in that suit, and that said suit afforded the proper remedy for that purpose, and to that end, and relying thereon, the remedy of that suit was pursued, and none other invoked against said judgment, and for which reason he did not institute a direct proceeding for the purpose of having said judgments vacated and set aside; that said suit in the district court of Bosque county, Tex., was tried on April 23, 1909, resulting in a judgment in favor of the plaintiff therein, and annulling the said judgments therein involved; that the defendants in said suit appealed from that judgment, and, by the judgment of the Court of Civil Appeals for the Third Supreme Judicial District of Texas, the judgment of the trial court in that case was reversed, and judgment rendered for the appellants, or the defendants in the trial court, because of and on the ground of its not having been allowable in such a collateral proceeding to so establish the invalidity of said judgments; that a motion for rehearing having been overruled by the said Court of Civil Appeals, a writ of error was applied for from the judgment of that court, which was only a short time ago denied by the Supreme Court, and accordingly the aforesaid suit so instituted in the district court of Bosque county, Tex., has been only recently concluded, and because of the pendency of that suit and the advice of his counsel in respect thereto, and his belief that that suit afforded him the proper remedy, whereby said judgment might be annulled and vacated, he has not before now instituted this direct proceeding to annul and vacate said judgments."

[1] Counsel for relators Estey & Camp assert that the judgment of this court, reversing and rendering and establishing and foreclosing a lien in their behalf upon the land, is conclusive and final, and that the action of respondents, which has resulted in arresting the execution and enforcement of that judgment, is unlawful, and should be prohibited by this court. Counsel for respondents traverses that assertion, and contends that the judgment of this court constituted no bar to the proceedings instituted by respondents since the judgment of this court became final.

We are of opinion that the law sustains relators' contention, but conditions are such as preclude an elaborate discussion of all the questions presented, and we must content ourselves with a brief statement of the reasons which have caused us to reach the conclusion announced. We think the application for writ of prohibition and the reply thereto present a mixed question of res adjudicata and laches or want of diligence by Luther and his vendees. As the case was presented to this court on the former hearing, we held that it was not permissible for Williams, by parol testimony, to contradict the recitals in the justice court judgments to the effect that Luther had been served with notice, for the reason that the suit brought by Williams was a collateral and not a direct attack upon those judgments. One reason for that conclusion was the fact that Luther, and not Williams, was the only party who could bring an action to annul those judgments. It now appears from Luther's petition or bill of review filed in the justice court that, while Luther was not a nominal party to the suit instituted by Williams he bore such relation to that suit as rendered the judgment therein as binding upon him as it was upon Williams. Palmer v. Hays, 112 Ind. 290, 13 N. E. 882; Burns v. Gavin, 118 Ind. 320, 20 N. E. 799; Bennitt v. Star Milling Co., 110 Ill. 14, 7 N. E. 498; Kolpack v. Kolpack, 128 Wis. 169, 107 N. W. 457, 116 Am. St. Rep. 29; Courtney v. Knabe Co., 97 Md. 499, 55 Atl. 614, 99 Am. St. Rep. 456; Pew v. Johnson, 35 Mont. 173, 88 Pac. 770, 119 Am. St. Rep. 852; Carlton v. Johnson, 25 Ala. 300, 60 Am. Dec. 515; Plum v. Godnow, 123 U. S. 560, 8 Sup. Ct. 216, 31 L. Ed. 268; Bonner & Eddy v. Green, 6 Tex. Civ. App. 96, 24 S. W. 835.

In Pew v. Johnson, supra, the court said: "A person, though not technically a party to a prior judgment, may nevertheless have been so connected with it by his interest in the result of the litigation and his active

participation therein as to be bound by such judgment." The other cases cited are to the same effect. Hence, while the case was disposed of by this court upon the theory that Luther was not a party to the litigation, and while the judgment was inadvertently entered upon the minutes against him, it now appears from his own showing that he was in fact so connected with the case as to render the judgment binding upon him. Hence it appears that Luther procured Williams to institute the suit, wherein it was alleged in the plaintiff's petition that no citation had been served upon Luther in the justice court cases, wherein judgments had been rendered against him; and, while there was no specific prayer for the annulment of those judgments, there was a prayer for recovery of the land, removal of cloud from Williams' title thereto, and for general and special relief.

This court disposed of the plaintiff's branch of the case upon two theories; the first was that it was a collateral and not a direct attack upon the judgments rendered by the justice of the peace; and the other was that, if we were mistaken in that holding, and it was a direct attack upon those judgments, the testimony which the trial court permitted the plaintiff to introduce, and which consisted of the sworn evidence of Luther to the effect that he was not served with citation in those suits, was not sufficient to overcome the recitals in the judgment; and therefore the proof failed to show that Luther was not served with citation before the judgments were rendered against him. As to the latter holding, Williams, who, it now appears from Luther himself, was acting for Luther, asquiesced. We say this because in Williams' motion for a rehearing in this court he did not challenge the correctness of that holding, and he did not then, and has not since, asked that the case be remanded to the trial court for another trial. Therefore it would seem, if the trial court had jurisdiction to render a decree annulling the justice court judgments, the judgment of this court will bar Luther from again litigating that question. Having litigated that question once, though he did so in the name of Williams, and so concealed his connection with the case as to cause this court to render judgment upon the assumption that he was not a party to the litigation, yet, having admitted in the proceedings subsequently instituted by him that Williams was prosecuting this case for and on behalf of him (Luther), if the district court of Bosque county had the power to award the relief he now seeks, the judgment of this court, denying him that relief, must preclude him from again seeking that relief in any court. So much as to the doctrine of res adjudicata, as applied to the plaintiff's cause of action.

[2] We shall now consider that doctrine and the question of laches or diligence, as applied to the cross-action set up by Estey & Camp, and upon which this court rendered judgment in their favor. They alleged in their plea that they had valid liens upon the land in controversy, which were created by the registration, in Bosque county, of abstracts of their judgments against Luther, which registration, they alleged and proved, was prior to Williams' purchase of the land from Luther. They prayed for judgment establishing and foreclosing the liens referred to, and this court rendered judgment in their behalf and to that effect. Their plea, asking for that relief, constituted a separate and distinct cause of action, and if Luther had no right to make a direct attack upon the justice court judgments in that court he is not entitled now to have the judgment rendered by this court arrested and stayed, while he makes such attack in the justice court to annul the judgments rendered by that court, unless he presents a sufficient excuse for not requesting the trial court to stay the proceedings in that court, when the case was called for trial, to give him time to annul the justice court judgments. The only excuse he presents is the fact that he was advised by his counsel that he could procure that relief in that case. That is not a sufficient excuse. As a general rule, to which there may be some exceptions, the mistakes, omissions, and negligence of an attorney are attributable to the client for whom the attorney acts. If a certain fact has not been proved, because the attorney advised that it was not material, or if a particular witness has not been summoned, because the attorney does not deem it necessary, a new trial will not be awarded, much less a final judgment enjoined and arrested, to enable the party to supply proof which the attorney's mistaken judgment prevented the client from furnishing at the trial. This rule is so well established that it is not deemed necessary to cite authorities in support of it. It must be borne in mind that we are now dealing with the case as though the record had shown that Luther himself was both an actual and nominal party to this suit. According to his own showing, he bore such relation to the case as made it his duty, if any grounds existed for annulling the justice court judgments in the court below, to present and urge those grounds which his representative, Williams, did, but which this court decided against him on the facts. And if that court had no jurisdiction to annul those judgments, and it was necessary to institute a proceeding in the justice court for that purpose, Luther, either in person or through his representative, Williams, should have requested the district court of Bosque county to continue the case until he could institute and prosecute to final judgment a proceeding in the justice court to annul the judgments there standing against him. The

latter course was not pursued, and the only excuse for not doing so is the fact that his attorneys advised him that it was not necessary. If the district court of Bosque county did not have jurisdiction to annul those judgments, then it was necessary that a proceeding for that purpose should have been brought in the justice court, and his attorney's mistake in not asking for time to pursue that course will not excuse Luther.

Whether or not the district court of Bosque county had jurisdiction to enter a decree, annulling the judgments against Luther rendered by the justice court of Tarrant county, need not be decided in this proceeding, as it appears that the land upon which relator's lien was foreclosed is of value amply sufficient to satisfy that lien; and such satisfaction will dispose of two of the judgments. No abstract of the other justice court judgment against Luther was recorded nor lien asserted under that judgment; and the validity of that judgment and the rights of the parties thereunder were in no wise involved in the suit referred to. Therefore the acts of respondents in taking steps to prevent relators from collecting that judgment do not in any wise interfere with the enforcement of the judgment rendered by this court.

We therefore order and direct that a writ of prohibition be issued by the clerk of this court, requiring the Honorable O. L. Lockett and the Honorable W. T. Simmons, as district judges, to rescind the orders which they have made, granting writs of injunction restraining the sale of the land in Bosque county, and described in the order of sale delivered to the sheriff of that county, and prohibiting all the respondents from in any wise interfering with the enforcement of the judgment rendered by this court. The costs of this proceeding will be taxed against the respondents John T. Luther and J. M. and Z. T. Burkett.