FRANK W. MURPHY, T. B. Cayou, John F. George, Respondents, v. CHARLES SWANSON, Victor Moynier, Axtell Soder, E. G. Patterson and Oscar Backman, Constituting the Board of County Commissioners of Burleigh County, North Dakota; J. A. Flow as County Treasurer of Burleigh County, North Dakota, Frank Johnson as County Auditor of Burleigh County, North Dakota, Burleigh County, North Dakota, a Municipal Corporation, and F. O. Hellstrom, Appellants.

(32 A.L.R. 82, 198 N. W. 116.)

**Injunction — order pendente lite allowable after service of answer by defendant.**

1. Under § 7531, Comp. Laws, 1913, on motion made and notice given, an injunction pendente lite may be allowed subsequent to the service of an answer by the defendant.

---

Note.—(4) Authority of county to employ tax ferret, see notes in 4 L.R.A. (N.S.) 339; 38 L.R.A.(N.S.) 261; 11 A.L.R. 913; 32 A.L.R. 88.

**Injunction — showing by affidavit not prerequisite for temporary restraining order, where admitted in pleadings.**

2. Where the facts relied upon as warranting injunctive relief are admitted on the pleadings, a showing thereof by affidavit is not a prerequisite to the issuance of a temporary restraining order.

**Injunction — law requiring written undertaking before injunction pendente lite mandatory.**

3. The provisions of § 7532, Comp. Laws, 1913, requiring a written undertaking on the part of the plaintiff precedent to the issuance of an injunction pendente lite are mandatory.

**Counties — law held not to authorize county commissioners to employ tax ferret.**

4. The board of county commissioners of Burleigh County sought to employ one Hellstrom as a tax-ferret by resolution reading:

"Whereas, it has been brought to our attention that large amounts of taxable property are alleged to have escaped taxation during the last year and previous thereto, and,

"Whereas, one F. O. Hellstrom has been instrumental in calling this matter to our attention and has compiled and brought certain data before us in relation thereto,

"Therefore, be it resolved that the said F. O. Hellstrom be employed to assist the state's attorney in investigating said matter, not only those who are now affected by the data now brought before us by him, but all property that has escaped taxation regardless of individuals or corporations affected, and that he receive a retainer of $200.00 and ten percent of all taxes actually collected from any taxable property placed on the tax lists through his efforts, but in case the ten percent shall equal the sum of $200, then and in that case said retainer fee shall be deducted from said ten percent allowance."

*Held* for reasons stated in the opinion that subsection 9, § 3276, Comp. Laws, 1913, does not empower the board to enter into such contract.

**Counties — county commissioners have only such implied powers as are reasonably necessary in performance of duties expressly imposed.**

5. A board of county commissioners has only such implied powers as are reasonably necessary to enable it to exercise and perform those powers and duties which are expressly granted to and imposed upon it.

**Counties — county commissioners without implied authority to contract for performance of public duties.**

6. A board of county commissioners has no implied authority to contract with private persons for the performance of duties imposed by law on public officers.

Taxation — contract for employment of tax ferret not upheld unless ex-
pressly authorized by statute.

    7. A contract for the searching out of property escaping taxation and the
imposition and collection of taxes thereon on a percentage basis is contrary
to a sound public policy, and unless expressly authorized by legislative
enactment will not be upheld.

Opinion filed March 19, 1924.

Counties, 15 C. J. § 103 p. 457 n. 64; § 238 pp. 545 n. 51, 546 n. 52; § 239 p. 547
n. 63.  Injunctions, 32 C. J. § 497 p. 306 n. 63; § 506 p. 310 n. 9; § 583 p. 352 n.
94.  Taxation, 37 Cyc. p. 980 n. 33.

From an order of the District Court of Burleigh County, *Jansonius*,
J., the defendants appeal.

Affirmed conditionally.

*Edward S. Allen* and *F. O. Hellstrom*, for appellants.

"Where the legislature has spoken thus clearly, it would be nothing
short of judicial legislation for us to write the exception into the
statute." First State Bank v. Wallace, 187 N. W. 728–733.

"A contract is not against public policy unless it contravenes some
public statute or is against good morals, or that its tendency is to
interfere with the public welfare." 6 R. C. L. 712, see also footnotes;
McCowan v. Pew, 153 Cal. 735, 21 L.R.A.(N.S.) 800, 96 Pac. 893,
15 Ann. Cas. 630.

"The rule that a contract is invalid if it conflicts with the statute is,
however, not an inflexible one.  It is only when the statute is silent and
contains nothing from which the contrary is to be inferred that the con-
tract is void." 6 R. C. L. 700, note 9; Dothart v. Congden, 197 Ill. 349,
90 Am. St. Rep. 167, 64 N. E. 348; Coshin v. Pliter, 168 Mich. 386,
134 N. W. 482; Nemen v. Wright, 75 Va. 238, 40 Am. Rep. 720.

"Public policy is what the statute enacts." 6 R. C. L. 709, note
13; Buck v. Walker, 115 Minn. 239, 132 N. W. 205, Ann. Cas. 1912D,
882; People ex rel. Peabody v. Chicago Gas Trust, 8 L.R.A. 497;
6 R. C. L. 799, note 14.

"It is generally recognized that the public policy of a state is to
be found in its Constitution and its statutes." 6 R. C. L. 109, notes 6,
7; Pricket Pub. Co. v. Carbon County, 13 L.R.A.(N.S.) 1115–1117.

Statute "is final so far as the courts are concerned." 6 R. C. L. 109, notes 6, 7; McFadden v. Blocker, 58 L.R.A. 894.

"A Legislative act if constitutional declares in terms the public policy of the state and is final so far as the court is concerned." 105 N. W. 203–205, citing Kuhn v. Kuhn, 125 Iowa, 449, 101 N. W. 151, 6 R. C. L. 109, note 9.

"All questions of policy are for the determination of the legislature." 6 R. C. L. 109, note 10.

"And not for the courts." Loman v. Minneapolis Gas Co. 65 Minn. 196, 68 N. W. 53; Penn. R. Co. v. Ewing, 241 Pa. 581, 49 L.R.A. (N.S.) 977, 88 Atl. 775.

"Where the courts intrude in their decrees their opinions on questions of public policy they in effect constitute the judicial tribunals as law making bodies in usurpation of the powers of the legislature." 6 R. C. L. 110, note 5; Haley Lumber Co. v. Morris, 33 Wash. 409, 63 L.R.A. 820, 99 Am. St. Rep. 963, 74 Pac. 681; State v. Superior Ct. 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D, 78.

*Newton, Dullam & Young,* for respondents.

It is elementary that an exception in some form must be made in the trial court before error in appellate court can be based thereon. Morris v. M. St. P. & Ste. St. M. R. Co. 32 N. D. 371.

"A contract entered into by a board of county commissioners with a firm of attorneys, by the terms of which, in consideration of the advice and services of said attorneys rendered to the county to enable such commissioners to lawfully place upon the tax list of said county certain lands which had been erroneously left off the assessment roll by the assessors, said commissioners agreed to pay said attorneys a sum equal to 25 per cent of all the taxes which should be collected on said lands for the year in question, held *void* as against public policy." Platte County v. Gerrard (Neb.) 11 N. W. 298.

"A contract made by the board of county commissioners of McHenry county with A. H. Jones, whereby he was employed to collect a judgment of $6,565, belonging to said county, from which no appeal had been taken, and the item for an appeal had expired, which contract contemplated the bringing of supplementary proceedings and divers actions against the judgment debtors and others, is not within the power of such board, but, on the contrary, is exclusively within the

control and jurisdiction of the district court." Fox v. Walley, 13 N. D. 610.

The assessment must be made in the manner provided by statute. It must be the formal act of the officer elected or appointed for that purpose. No one else can do it. 26 R. C. L. 340, § 297.

NUESSLE, J. In March, 1923, the board of county commissioners of Burleigh county adopted the following resolution:

"Whereas, it has been brought to our attention that large amounts of taxable property are alleged to have escaped taxation during the last year and previous thereto, and,

"Whereas, one F. O. Hellstrom has been instrumental in calling this matter to our attention and has compiled and brought certain data before us in relation thereto,

"Therefore, be it resolved that the said F. O. Hellstrom be employed to assist the state's attorney in investigating said matter, not only those who are now affected by the data now brought before us by him, but all property that has escaped taxation regardless of individuals or corporations affected, and that he receive a retainer of $200 and ten percent of all taxes actually collected from any taxable property placed on the tax lists through his efforts, but in case the ten percent shall equal the sum of $200, then and in that case said retainer fee shall be deducted from said ten percent allowance."

Thereafter and pursuant to said resolution, the defendant Hellstrom entered upon the performance of the acts provided for in the resolution. The plaintiff thereupon brought this action to enjoin the defendants herein from carrying out the contract purported to have been entered into by virtue of this resolution.

The plaintiffs in their complaint set out that they are residents and taxpayers of Burleigh county; that the resolution above quoted was passed by the board of county commissioners of Burleigh county; that the same constitutes a pretended contract between Burleigh county and the defendant Hellstrom; that Hellstrom has entered upon the performance of such contract and is incurring expenses thereunder; that the defendant officers of Burleigh county are about to carry out their part of said contract; that Burleigh county has a full complement of county officials duly qualified and acting, whose duty it is to do all

of the things provided and required to be done under the terms of said contract, and that the said contract is ultra vires, null and void; that the plaintiffs are without any remedy at law, and that unless the defendants are enjoined from carrying out such contract and in making payment as provided thereunder, the plaintiffs and other taxpayers of Burleigh county will suffer irreparable injury.

Thereafter the defendants answered, admitting that the plaintiffs are residents and taxpayers of Burleigh county; that the resolution set out in the complaint was passed, and that the defendant Hellstrom is doing the acts as required thereby; that what is being done thereunder is done by and under the supervision of the state's attorney of Burleigh county, is a matter of public importance and concerns the public welfare; that the employment of a special assistant to the state's attorney is necessary; that the regular county officers and clerks are taxed to the extent of their ability to perform the regular duties of their office; that the employment of defendant Hellstrom as a special assistant state's attorney is a lawful exercise of the power and duty vested in the board of county commissioners, and was done by and with the advice and consent of the state's attorney.

The complaint was verified by one of the plaintiffs on information and belief. A notice of motion for a temporary restraining order was served with the summons and complaint. No affidavit was made and served as a basis for injunctive relief. Prior to the day on which such motion was heard the defendants answered. The district court, after a consideration of the motion, made its order restraining the further carrying out of the contract in any manner whatsoever pending the final disposition of the action. This matter is now here on appeal from such order.

Appellants first urge that the court erred in issuing the temporary order subsequent to the joining of issue and before the matter was heard on its merits. We think that there is no ground for this position. The hearing was not ex parte. There was a motion and notice to the defendants and the defendants appeared and were heard in the matter. See Comp. Laws, 1913, § 7531.

Appellants further contend that the court erred in not requiring the plaintiffs to make and submit a showing by affidavit. It is sufficient to say that it does not appear that there was any objection raised

at the time of the hearing on the ground of the insufficiency of the showing as made. Furthermore, the real question in this case rests wholly upon the validity of the action of the board of county commissioners, and by their answer served prior to the hearing on the motion, the defendants admit the making of the contract as alleged in the complaint. The matters complained of being admitted, a showing by affidavit was not necessary.

The appellants also predicate error because no undertaking was furnished by the plaintiff or required by the court precedent to the issuance of the temporary order. The respondents contend that the provisions of the statute, § 7532, Comp. Laws, 1913, as to security upon an injunction, are directory only and not mandatory. They do, however, offer to furnish such undertaking in case the same is required. We are of the opinion that the statute is mandatory, and that an undertaking should have been required. However, the purpose of the statute will be subserved, and the appellants fully protected by an undertaking furnished at this time. The respondents should be afforded an opportunity to comply with this requirement. We deem it proper, therefore, to proceed to a consideration of the propriety of the order appealed from upon the merits.

The respondents' position is grounded on the propositions that the purported contract as made and entered into between the board of county commissioners and the defendant Hellstrom is contrary to a sound public policy and wholly beyond and outside of the authority of the board, and therefore, void. On the other hand, the appellants contend that in the absence of express authority, the power is implied in the board of county commissioners to enter into and perform a contract such as is here in question, and that furthermore, there is express authority for its so doing by virtue of subsection 9 of § 3376, Comp. Laws, 1913.

The Constitution, § 172, provides that the fiscal affairs of a county shall be transacted by a board of county commissioners. The board has "power to institute and prosecute civil actions in the name of the county for and on behalf of the county." Comp. Laws, 1913, § 3273. It is required to "superintend the fiscal affairs of the county, supervise the conduct of the respective county offices and . . . ," Comp. Laws, 1913, § 3276. Section 3376, Comp. Laws 1913 enumerates the

various duties of the state's attorney, makes him the legal adviser of the board of county commissioners, and requires that he give, when required, his opinion in writing to the county, district, township and school district officers on matters relating to their respective offices; and at subsection 9 provides: "It is the intention of this article to make the attorney general, his assistants and the state's attorney the only public prosecutors in *all cases* civil and criminal wherein the state or county is a party to the action, and that they only shall be authorized and empowered to perform the duties herein set forth, except as hereinafter provided, . . . provided, however, that nothing herein contained shall prevent the county commissioners of any county *in cases of public importance* and with the advice and consent of the state's attorney, employing such additional counsel as may be deemed advisable, to assist the state's attorney, upon such compensation as may be agreed upon."

Appellants contend that by virtue of this last provision, the resolution and contract here in question were properly made and entered into; that the matter of taxation is a matter of public importance; and that, therefore, with the consent of the state's attorney, it was proper for the board to enter into such contract. We think, however, that the appellants have misconstrued this statute. It must be borne in mind that the attempted employment of the defendant Hellstrom, while ostensibly as a special assistant to the state's attorney, was in fact an employment as a so-called tax-ferret, that is, he was employed on a percentage basis to search out, discover and report for assessment such property as had escaped taxation and aid in the collection of the taxes imposed. There is no contention that the action of the board here challenged was an exercise of the power of appointment of an assistant to the state's attorney under the provisions of chapter 52, Laws 1921. Nor do we pass upon the power of the board under that statute. The duties that Hellstrom was to perform might or might not require the giving of legal advice, the preparation of cases, or the trial thereof; such duties might in the main be performed by one wholly without legal qualifications. He might discover a vast amount of property subject to taxation, and which was escaping. Such property might be entered on the assessment roll by the auditor, and taxes be extended against it, and yet there be no case. It is true that the matter

of taxation is a matter of public importance, but so is every matter in which the county is concerned or interested. And if the board of commissioners may employ special counsel to advise and assist in tax matters, why not in any other business affecting the public which it may be necessary to consider and dispose of, and thus the state's attorney, the officer whose express duty it is to counsel and advise the board and other officers, be made a mere cipher. It appears clear to us that the term "cases of public importance" as used in the statute in question refers to causes at law to be defended or that might be brought and tried. Every business transaction is pregnant with the possibility of litigation. Had it been the purpose of the legislature to empower the county commissioners to employ special counsel to advise them in matters where no suits were pending or in contemplation, or where such suits were only more or less remote possibilities, we think that other language would surely have been used to express such purpose. Had the legislature provided for such employment in "matters of public importance" or "affairs of public importance," it might be possible that the construction contended for by the appellants would be justified, but the words "cases of public importance" were used, and we believe advisedly, especially in the light of the provision contained in the same sub-section that "it is the intention of this article to make the attorney general, his assistants and the state's attorney the only public prosecutors in all cases civil and criminal wherein the state or the county is a party to the action, and that they only shall be authorized and empowered to perform the duties herein set forth, except as hereinafter provided." We think it is plain that the provision relied upon confers no express authority upon the board to make the contract here complained of by the respondent. See Storey v. Murphy, 9 N. D. 115, 81 N. W. 23; Fox v. Walley, 13 N. D. 610, 102 N. W. 161.

Has the board of county commissioners the implied power to enter into such a contract? Can it be said, considering the powers and duties expressly given the board that they are such as to warrant the implication that in exercising these powers and performing those duties it may enter into such a contract? The rule is that such board has only such implied powers as are reasonably necessary to enable it to exercise and perform those powers and duties which are expressly granted to

and imposed upon it. Stevens v. Henry County, 218 Ill. 468, 4 L.R.A.(N.S.) 339, 75 N. E. 1024, 4 Ann. Cas. 136; Chase v. Boulder County, 37 Colo. 268, 86 Pac. 1011, 11 Ann. Cas. 483.

It is true that the board as a board is charged with the superintendence of the fiscal affairs of the county and is, therefore, interested in the collection of taxes. It likewise is true that it is charged with the supervision of the conduct of the county officials, and it is true that it is the right and duty of the board to institute and defend any and all suits in which the county may be a party or be interested. But on the other hand, it, as a board, is charged with no duty insofar as the assessment of such taxes is concerned, nor with the collection of such taxes. The law expressly reposes in the various local officers the duties pertaining to the assessment of property, and places in the county treasurer the power and duty to collect such taxes as may be assessed and levied. See Comp. Laws, 1913, § 2156. The board of county commissioners fixes the amount of the levy for county purposes only, and while it sits as a board of equalization and review, it can only equalize as between classes of property, excepting in unorganized portions of its county. The duty to correct false and incorrect tax lists and to place property escaping taxation upon the assessment roll is the duty of the auditor and no other officer can place such property upon the assessment roll. And the statute provides that the State Tax Commissioner must require him to do this. See Laws 1919, chap. 213. The auditor has power to issue process and compel the attendance before him of persons having knowledge of the facts for examination under oath. See Comp. Laws, 1913, §§ 2216 and 2217. And since the county auditor is expressly given this power, the duty to exercise it is implied. The board of county commissioners is charged with the supervision of the conduct of the county officials, but it has no right to perform their duties or to exercise their prerogatives, and it has no right to delegate to others authority which it cannot itself exercise. So far as the board itself is concerned, there is under the statute, no duty imposed on it or its members individually to search out property which has escaped taxation. If it or its members individually have notice of the fact that property has escaped taxation, then the obligation may rest upon it or them to advise the county auditor to the end that that officer properly charged with the duty may

place such property upon the assessment roll. Under its supervisory power it may and should require the auditor to list for taxation all taxable property that such auditor has or may have notice of. But may it employ a private person to assist the state's attorney in doing that which it is the duty of the auditor to do?

The contract here sought to be vindicated by the appellants is a contract purporting to provide for legal assistance to the state's attorney for the purpose of doing that which neither the board of commissioners nor the state's attorney has the power to do. It is not a contract purporting to furnish assistance to the county auditor to enable him to perform the duty which the law charges him with. The duties to be performed by Hellstrom under the contract are plainly duties imposed by law on other public officers. We must, therefore, hold the contract to be beyond the implied power of the county board to enter into, and therefore, void. Storey v. Murphy, supra; Grannis v. Blue Earth County, 81 Minn. 55, 83 N. W. 495; Stevens v. Henry County, and Chase v. Boulder County, supra; State ex rel. Coleman v. Dickinson County (State ex rel. Coleman v. Fry) 77 Kan. 540, 16 L.R.A.(N.S.) 476, 95 Pac. 392; Pierson v. Minnehaha County, 28 S. D. 534, 38 L.R.A.(N.S.) 261, 134 N. W. 212; State ex rel. Workman v. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737; Whittinghill v. Woodward County, 68 Okla. 320, 11 A.L.R. 910, 174 Pac. 489.

It also appears to us that there is another and additional reason in itself sufficient to require us to hold that this contract is void. While the board of county commissioners is charged with the superintendence of the fiscal affairs of the county and with certain duties with reference to tax matters, and while it has authority generally to enter into contracts on behalf of the county, and though it be conceded that it has the authority to enter into a contract to employ a special assistant to the state's attorney to the end that property unlawfully escaping taxation may bear its just proportion of the tax burden, nevertheless it has no authority to enter into a contract such as that here in question for the reason that such contract provides that a fixed proportion of such taxes as might be collected through the efforts of the defendant Hellstrom under the contract shall be devoted to Hellstrom as compensation. It has been held that contracts of this

character are contrary to a sound public policy, and unless expressly warranted by legislative authority, will not be upheld. Chester County v. Barber, 97 Pa. 455; Platte County v. Gerrard, 12 Neb. 244, 11 N. W. 268; State ex rel. Coleman v. Dickinson County (State ex rel. Coleman v. Fry) 77 Kan. 540, 16 L.R.A.(N.S.) 476, 95 Pac. 392. We see no good reason to deviate from this rule. Rather, we see the reason for the rule increased by the provisions of our statute. While the county board has supervision of the fiscal affairs of the county and certain duties with reference to the matter of taxation, nevertheless those duties do not at all touch upon the assessment and levy of that portion of the tax which is devoted to other than county purposes, that is, to the township, the school district, the village, the city or the state taxes. The county board surely has no power to bargain away in advance any portion of such taxes; and if as a result of the contract here in question any taxes be paid, the county is responsible to the state and to the various taxing sub-divisions under the county for the whole of their respective portions of such taxes so collected. The state nor any of such inferior tax beneficiaries can be charged with any proportion of the payments made under the contract. The expense of collection cannot be pro rated. Mineral School Dist. v. Pennington County, 19 S. D. 602, 104 N. W. 270.

The order appealed from will, therefore, be affirmed, on condition, however, that the respondents, immediately upon the filing of the remittitur herein in the district court, shall enter into and file an undertaking in compliance with the provisions of § 7532, Comp. Laws, 1913, in such amount and with such surety as the trial court may order.

BIRDZELL, JOHNSON, and CHRISTIANSON, JJ., concur.

BRONSON, Ch. J., concurs in result and in principle of law stated in paragraph 7 of the syllabus.